SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

PROJECT VERITAS,

            Plaintiff,

 -against-.

ANTONIETTA ZAPPIER and VINCENT ZAPPIER,

            Defendants.

Index No.

**COMPLAINT**

Plaintiff Project Veritas, by its undersigned counsel, as and for its complaint against Defendants Antonietta Zappier and Vincent Zappier, alleges as follows, upon knowledge as to itself and its own actions, and otherwise upon information and belief:

## SUMMARY OF THE ACTION

1. This case arises from repeated misconduct by Defendant Antonietta Zappier, who is a disgruntled former employee of Project Veritas, and who has repeatedly and unlawfully refused to abide by her Separation Agreement and General Release of All Claims ("Separation Agreement"). In addition, this action seeks relief from a campaign of harassment and attempted intimidation waged by Mrs. Zappier and Defendant Vincent Zappier (who is Mrs. Zappier's husband) against Project Veritas and its employees.

2. Mrs. Zappier worked for Project Veritas for approximately two and a half years from in or about September 2019 until March 30, 2022, when her at-will employment was terminated due to a pattern of conduct evincing a lack of judgment, professionalism, and responsibility. Upon her termination, Mrs. Zappier was offered a severance payment. While Project Veritas was under no legal obligation to make such a payment, it generously agreed to do so, and the parties negotiated, finalized, and executed the Separation Agreement.

1

3. Under the Separation Agreement, Mrs. Zappier was to receive $7,500.00 (the "Severance Amount") in exchange for certain agreements and promises including, without limitation, (i) her release of all claims, whether known or unknown, against Project Veritas and its employees; and (ii) her agreement to refrain from disparaging Project Veritas or its employees or representatives.

4. Project Veritas fully performed under the Separation Agreement, and timely paid the Severance Amount in full. Mrs. Zappier accepted and kept that payment, but she apparently decided that she wanted more money than she had agreed to under the Separation Agreement. She retained counsel,[1] who began to falsely argue that the Separation Agreement was void. Based on this frivolous assertion, Mrs. Zappier and her counsel began demanding greater and greater sums from Project Veritas, asserting an ever-changing constellation of never-before-made claims. This culminated in early May 2022, when Mrs. Zappier's counsel demanded severance equal to six months' pay.

5. Although Mrs. Zappier's new allegations lacked any support, and although Project Veritas was extremely disturbed by Mrs. Zappier's renouncement of the contract she had signed, Project Veritas decided to pay her the increased severance she was requesting as another gesture of good faith, and to help Mrs. Zappier through a difficult period in her life. Thus, Project Veritas' counsel informed Mrs. Zappier's counsel that Project Veritas had accepted the demand *in full*, and that the new severance paperwork would be forthcoming (the "Modified Separation Agreement"). Project Veritas made the first payment toward this Modified Separation Agreement.

---

[1] Mrs. Zappier retained Arthur Schwartz as counsel. Eleven years earlier, Mr. Schwartz represented ACORN, an organization that received federal funds. Project Veritas' founder, James O'Keefe, released a news story on ACORN. Subsequent to the release of Mr. O'Keefe's news story on ACORN, ACORN lost federal funding and eventually closed its doors.

2

6. But Mrs. Zappier's greed got the better of her honor. She again reneged on the Modified Separation Agreement. Her counsel advised Project Veritas that she was now refusing to consummate the deal, even though Project Veritas had agreed to pay 100% of what she had demanded.

7. At around the same time, Mr. Zappier, who is Mrs. Zappier's husband and who had had previous aggressive confrontations with Project Veritas employees, began harassing Project Veritas and its employees. On June 7, 2022, Mr. Zappier stalked and accosted a member of Project Veritas' staff by pulling him over on the side of the road, and made reference to a prior incident in which Mr. Zappier had nearly resorted to violence against a different Project Veritas employee. Mr. Zappier raised this incident to the employee he stalked in an apparent attempt to intimidate the employee into providing false evidence to support Mrs. Zappier's ever-increasing settlement demands. The incident made the employee extremely uncomfortable and apprehensive, caused him to be late to work, and caused a significant distraction at Project Veritas.

8. Enough is enough. Mrs. Zappier must be held to her legal obligations and prevented from making phony and extortionate claims, and both Defendants must be stopped from harassing Project Veritas and its staff. Accordingly, Project Veritas seeks court intervention and asserts causes of action for declaratory judgment, breaches of Mrs. Zappier's Separation Agreement, unjust enrichment, prima facie tort, and for an injunction.

## THE PARTIES

9. Plaintiff Project Veritas is an independent journalistic organization founded in 2011 by journalist James O'Keefe, who serves as its President, Chief Executive Officer, and Chairman of its Board of Directors. Project Veritas is a nonprofit, nonstock corporation incorporated under Virginia law, with its principal place of business in Mamaroneck, New York.

10. Defendant Antonietta Zappier is an individual residing in Harrison, New York.

3

11. Defendant Vincent Zappier is an individual residing in Harrison, New York.

## JURISDICTION AND VENUE

12. This Court has personal jurisdiction over Defendant Antonietta Zappier because she is domiciled in the State of New York.

13. This Court has personal jurisdiction over Defendant Vincent Zappier because he is domiciled in the State of New York.

14. Venue is proper in Westchester County under N.Y. CPLR § 503 because Project Veritas has its principal place of business in Mamaroneck, New York and therefore resides in Westchester County.

## FACTUAL ALLEGATIONS

**A.   Mrs. Zappier's Employment With Project Veritas Is Terminated, And She Agrees To The Separation Agreement.**

15. Mrs. Zappier had been an at-will employee of Project Veritas from around September 2019 until her employment was terminated on March 30, 2022.

16. The decision to terminate Mrs. Zappier had been made based upon her long and well-documented history of poor decision making and failing to meet the standards required of her.

17. In response to her termination, Mrs. Zappier repeatedly expressed how much she enjoyed her time at Project Veritas, that she was sorry for the events that led to her termination (which she claimed were "totally out of character"), and that she would like to be reinstated if at all possible.

18.     In fact, Mrs. Zappier wrote in one message that "my heart and soul are there with James [O'Keefe] and the company," and "[I] want to greatly remain there!"



19.     Other individuals, apparently acting on Mrs. Zappier's behalf or for her benefit, also expressed how much Mrs. Zappier enjoyed her time at Project Veritas, and asked if it would be possible to reinstate her. One such individual stated that Mrs. Zappier was "devastated to no end" at no longer working for Project Veritas because "she just loves it there. Loves the people. Loves the cause."

20.     Project Veritas declined to reinstate Mrs. Zappier.

21.     Mrs. Zappier had no legal entitlement to any severance under New York law.

22.     Nevertheless, Project Veritas decided to offer her a severance payment to ease her transition out of Project Veritas' employment.

5

23. The parties negotiated a severance package, which was memorialized in the Separation Agreement.

24. The Separation Agreement was executed by Mrs. Zappier and Project Veritas, and dated as of March 30, 2022.

25. The Separation Agreement is a final, binding, and enforceable contract.

26. The Separation Agreement provided that Mrs. Zappier's employment was terminated as of March 30, 2022.

27. The Separation Agreement also provided that Mrs. Zappier would receive a severance payment of $7,500.00 "as consideration for her promises" in the Separation Agreement.

28. Under the Separation Agreement, Mrs. Zappier agreed to irrevocably and unconditionally release Project Veritas from any and all claims, liabilities, causes of action, or demands, whether known or unknown.

29. The Separation Agreement further provided that "Employee acknowledges that the Severance Amount would not be paid but-for the release of any and all claims and in consideration of the mutual covenants in this Agreement."

30. In signing the Separation Agreement, Mrs. Zappier acknowledged, represented, and agreed that:

   a. She "had been paid all compensation to which [she was] entitled in connection with [her] employment with Employer"; and

   b. She was not aware of any work-related injury she suffered during her employment with Project Veritas.

31. Under the Separation Agreement, Mrs. Zappier further agreed that she would "refrain from making, either orally or in writing, any disparaging statements about the Released Parties."

32. The Separation Agreement also provided that "[t]his Agreement shall be binding on and inure to the benefit of the respective successors and assigns of Employer and Employee and, as applicable, the heirs, agents and representatives of the parties."

B. **Project Veritas Pays The Severance Amount, But Mrs. Zappier Reneges And Renounces The Separation Agreement, While Keeping The Severance Payment.**

33. Project Veritas timely paid Mrs. Zappier the full Severance Amount under the Separation Agreement.

34. However, on April 6, 2022, Mrs. Zappier began to assert, through counsel, that the Separation Agreement was void.

35. A few days later, Mrs. Zappier's counsel began to allege for the first time that Mrs. Zappier had suffered some unidentified form of harassment during her tenure at Project Veritas.

36. Mrs. Zappier had not reported any alleged harassment during her employment, and Mrs. Zappier's counsel did not provide any details at the time of this allegation.

37. Project Veritas requested detailed information about Mrs. Zappier's new allegations so that it could conduct a thorough investigation.

38. Eventually, Mrs. Zappier's counsel alleged that a Project Veritas employee known as "Jitsu"[2] had attempted to have some unwanted contact with Mrs. Zappier during a holiday party in 2021, and that two other employees had "pulled him off of her."

39. Mrs. Zappier's counsel also claimed that the alleged incident was captured on video (but it was not, as discussed below).

---

[2] Part of Project Veritas' journalism and news-gathering activities involves the use of undercover journalists, who sometimes use pseudonyms to protect their anonymity.

40. Project Veritas investigated Mrs. Zappier's allegation, and did not find any corroboration for her claims. Specifically, Project Veritas has located no photos or videos of the incident (and Mrs. Zappier's counsel provided none), and the individuals who Mrs. Zappier claims intervened emphatically deny that the incident ever occurred.

41. The allegation was also inconsistent with Mrs. Zappier's repeated and unequivocal statements about how much she loved the people and the working environment at Project Veritas.

42. Further, Mrs. Zappier's new allegation is inconsistent with her acceptance and retention of the Severance Amount, because the Separation Agreement contains a release that bars her new claims.

43. Notably, a month after making her new allegation, Mrs. Zappier communicated to Project Veritas' accounting team, demanding to know if "I'm getting paid tomorrow" pursuant to the Separation Agreement.

44. When Mrs. Zappier was informed that she would in fact be paid $2,500 the next day, she stated: "I thought the grand total was 7500" referencing the Severance Amount she had agreed to on March 30, purported to revoke on April 6, and was now asking to be paid on May 5.

45. Mrs. Zappier was told, "[t]hat's correct $7,500 is the total severance amount," to which she replied acknowledging receiving payments under the Separation Agreement.

C. **Mrs. Zappier Demands That Her Severance Be Increased To Six Months' Salary, Project Veritas Agrees To This Demand In Good Faith, And Mrs. Zappier Reneges Again.**

46. Although Mrs. Zappier denounced the Separation Agreement, she continued to keep and retain the Severance Amount, and, through counsel, demanded an increased severance payment equal to six months' salary.

8

47. Project Veritas did not approve of the way that Mrs. Zappier had renounced the parties' contract, but it also recognized that Mrs. Zappier was perhaps acting out due to difficult personal circumstances, and it wanted to help her.

48. Therefore, on May 15, 2022, Project Veritas' counsel advised Mrs. Zappier's counsel that Project Veritas would agree to increase her severance payment to equal six months' of salary.

49. Thus, Project Veritas accepted Mrs. Zappier's demand in full.

50. Based on the above, it appeared that the parties had agreed to resolve their disputes, with Project Veritas having agreed in full to Mrs. Zappier's demand, and Project Veritas began performing under the new increased Modified Separation Agreement.

51. Just a few days later, however, Mrs. Zappier's counsel advised Project Veritas' counsel that Mrs. Zappier changed her mind, and was again reneging on her word and refusing to enter into a written Modified Separation Agreement based on the increased amount she herself had demanded.

52. Instead, Mrs. Zappier's counsel demanded an even *greater* severance payment because, he claimed, Mrs. Zappier was still "furious" at having been terminated, she had received "encouragement" from others to sue Project Veritas, and Mrs. Zappier's counsel allegedly "heard an interesting story about" Project Veritas' founder James O'Keefe, which, he believed, would cast Mr. O'Keefe in a negative light (but which had no bearing on Mrs. Zappier's allegations).

53. Mrs. Zappier's counsel also claimed cryptically in a June 6 email that "there are a lot of people who want to talk."

9

**D.     Mr. Zappier Accosts A Project Veritas Employee On The Street, Harasses Him, And Prevents Him From Getting To Work On Time.**

54.     On May 27, 2022, Mrs. Zappier had sent text messages to two Project Veritas employees whom she identified as alleged witnesses to the incident that is the subject of her new claim. Those employees denied that Mrs. Zappier's claims were truthful.

55.     Mrs. Zappier, in an apparent attempt to coerce these employees to lie, texted both of them accusing them of lying "through your teeth," stating that they "know as a FACT" that her claim occurred, and demanding the both "REMEMBER." Both employees continue to deny her that allegations are truthful.

56.     On the morning of June 7, 2022, Mr. Zappier accosted one of the two Project Veritas employees who Mrs. Zappier claimed had witnessed the alleged incident at the holiday party.

57.     The employee was on his way to work, and was driving his scooter northbound on Palmer Avenue in Mamaroneck, New York.

58.     Mr. Zappier was in a silver Volvo SUV.

59.     Mr. Zappier drove past the employee, then pulled off to the side of the road and parked just south of Heathcote Avenue.

60.     Mr. Zappier then looked in his rearview mirror, apparently waiting for the employee to pass.

61.     The employee at first thought nothing of it, assuming it was just someone trying to leave a parking space, so he said "Sorry" as he passed by.

62.     Mr. Zappier immediately pulled beside the employee on Palmer Avenue and began driving beside him, keeping the same speed as him, making attempts to speak to him.

63. The employee could not understand what Mr. Zappier was saying and did not recognize him.

64. The employee pulled over, and got off his scooter, to try to determine why the driver of the SUV was yelling at him.

65. The employee looked into the window of the SUV and saw that Mr. Zappier was driving.

66. The employee had no desire to talk to Mr. Zappier, but it was too late as Mr. Zappier began talking to him.

67. The employee told Mr. Zappier "I can't talk to you," and noted that "Legal has recommended I not speak about this to you and I'm not going to."

68. Mr. Zappier responded "that's bullshit" and "fuck legal," and proceeded to scream other obscenities.

69. Mr. Zappier continued trying to get the employee to talk to him, saying things like "this is all fucked," "I'm not happy and my wife is not happy," and "my wife got the boot and everything is screwed."

70. Mr. Zappier then brought up Mrs. Zappier's allegation about the alleged incident during the holiday party, telling the employee "you pulled Jitsu off of her."

71. The employee responded, "I didn't pull anyone off of anyone," noting that the incident was alleged to have happened in a series of small crowded rooms with photographers and lots of people, and that neither he nor anyone else saw the incident happen.

72. Mr. Zappier became angrier, and said that the employee's truthful denial of Mr. Zappier's false claims was "fucked up."

73. Mr. Zappier then said, "I invited you to my house, we were friends," which gave the employee the impression Mr. Zappier was attempting to persuade him to lie or plant a memory that did not in fact occur.

74. The employee reiterated that he did not pull anyone off of Mrs. Zappier, nor did he see anything occur.

75. Mr. Zappier then referenced a prior incident in which he had threatened another Project Veritas employee. Specifically, Mr. Zappier stated in a loud and threatening manner that "if it wasn't for her [Mrs. Zappier] stepping in between that motherfucker and me, he would have had a hole this big in his chest" – motioning to his chest with his fingers showing a big hole on his chest.

76. Mr. Zappier was becoming angrier and angrier during the conversation.

77. The employee felt very uncomfortable and harassed, especially after Mr. Zappier stated that he apparently wanted to kill the other Project Veritas employee.

78. The frightening situation interfered with the employee's ability to get to work on time. Furthermore, the employee was unable to concentrate at work that day, as he was extremely disturbed by the incident, which caused him to discuss it repeatedly. Senior Project Veritas management were also disturbed upon hearing about the incident, and were forced to spend substantial time analyzing the situation and dealing with the fallout, all of which resulted in Project Veritas incurring a loss of its employees' time.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Declaratory Judgment – Enforceability of Separation Agreement)**

79. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth fully herein.

12

80. The Separation Agreement is a valid and binding contract, which is supported by consideration.

81. Mrs. Zappier has repeatedly purported to repudiate the Separation Agreement.

82. Accordingly, an actual controversy exists between Project Veritas and Mrs. Zappier regarding whether the Separation Agreement is a valid and binding contract, and judicial intervention is needed to resolve this dispute.

83. In view of the foregoing, Project Veritas is entitled to judgment declaring that the Separation Agreement is a valid and binding contract.

## AS AND FOR A SECOND CAUSE OF ACTION
**(Breach of Separation Agreement)**

84. Project Veritas repeats and re-alleges each of the foregoing paragraphs as if set forth fully herein.

85. Mrs. Zappier's repudiation of the Separation Agreement constitutes a breach of the Agreement.

86. Additionally, Mrs. Zappier has repeatedly disparaged Project Veritas in violation of the non-disparagement provision of the Separation Agreement.

87. Mrs. Zappier has also repeatedly asserted allegations and made demands for payment against Project Veritas, as set forth above, in violation of the release provisions of the Separation Agreement.

88. The Separation Agreement provides that upon a breach, "the non-breaching party may recover, in addition to damages, the reasonable costs and fees, including attorneys' fees/costs, incurred in establishing the breach and securing judicial relief."

89. In view of the foregoing, Project Veritas is entitled to actual, presumed, and other damages in an amount to be specifically determined at trial, together with its attorneys' fees and costs incurred in establishing the breach and securing judicial relief.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Unjust Enrichment)

90. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth fully herein.

91. As discussed above, Mrs. Zappier has kept and retained payments in connection with both the original Separation Agreement, and the Modified Separation Agreement, but she has failed and refused to perform under or abide by those agreements.

92. It is unjust and inequitable for Mrs. Zappier to retain the funds paid to her under these Agreements while reneging on her obligations under the Agreements.

93. In view of the foregoing, Project Veritas is entitled to actual, presumed, punitive, and other damages in an amount to be specifically determined at trial.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (*Prima Facie* Tort)

94. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth fully herein.

95. As set forth above, Defendants have repeatedly threatened, harassed, and interfered with Project Veritas employees.

96. Defendants' conduct was and continues to be committed without excuse or justification.

97. Defendants' conduct is being committed out of malevolence and for no other purpose.

98. Defendants' conduct is harassing and intimidating to Project Veritas and its employees, has caused Project Veritas to lose the value of its' employees' time, and has created an undue and improper distraction for Project Veritas and its employees.

99. As a result of the foregoing, Project Veritas is entitled to damages from Defendants in an amount to be proven at trial, punitive damages, attorneys' fees and costs, and preliminary and permanent injunctive relief prohibiting Defendants, and any persons or entities acting at their direction or on his behalf, from contacting any employee of Project Veritas, directly or indirectly, through any means, other than for a legitimate business purpose.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**(Injunctive Relief)**

100. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth fully herein.

101. As set forth above, Defendants have repeatedly threatened and harassed Project Veritas employees.

102. Defendants' bizarre misconduct has distracted Project Veritas' employees from their duties, caused them to be late to work, and instilled a reasonable apprehension of harm and further harassment.

103. There is no justification for Defendants' actions described above.

104. The Court should restrain and enjoin Defendants from contacting any employee of Project Veritas, directly or indirectly, through any means, other than for a legitimate business purpose.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Project Veritas respectfully requests that the Court enter judgment in Plaintiff's favor, and against Defendants, as follows:

(1) A declaration that the Separation Agreement is a valid, binding, and enforceable contract;

(2) Actual, presumed, and punitive damages in an amount to be specifically determined at trial;

(3) A limited, narrowly tailored injunction prohibiting Defendants from contacting any employee of Project Veritas, directly or indirectly, through any means, other than for a legitimate business purpose;

(4) All costs, disbursements, fees, and interest as authorized by New York Law and Rules and/or the governing contracts; and

(5) Such other and additional remedies as the Court may deem just and proper.

Dated:   Brooklyn, New York
         June 10, 2022

**ABRAMS FENSTERMAN, LLP**

 /s/ *Justin T. Kelton*
Justin T. Kelton
1 MetroTech Center, Suite 1701
Brooklyn, NY 11201
Tel: (718) 215-5300 x 501
Fax: (718) 215-5304
Email:  jkelton@abramslaw.com
*Attorneys for Plaintiff*
