

**Arthur Z. Schwartz**
Principal Attorney

aschwartz@afjlaw.com

225 Broadway, Suite 1902
New York, New York 10007

t. (212) 285-1400
f. (212) 285-1410

www.afjlaw.com

October 2, 2022

<u>By ECF</u>

Hon. Philip M. Halpern
United States District Court
300 Quarropas Street
White Plains, New York 10601

     Re: Zappier v. Project Veritas
       22-cv-06709
       <u>Response to Pre-Motion Letter</u>

Dear Judge Halpern:

   We write in response to the Pre-Motion to Dismiss Letter filed by Project Veritas ("PV"), one of the two co-employer defendants in this case, and Michael Spadone, who is sued for sexually assaulting and causing the quid pro quo firing of Plaintiff, seeking to litigate a Motion to Dismiss. The other co-employer, Engage PEO, LLC, who has separate counsel, has not joined in with Mr. Kelton's and Mr. Clarke's argument. I should note that we did respond to Mr. Kelton's and Mr. Clarke's initial pre-motion letter; the problem was that they counted Rosh Hashanah as a "business day," (I was off from work), and our responsive letter crossed with the filing of their letter to the Court.

   We submit that PV's and Spadone's proposed motion is entirely meritless, so lacking in merit that the Court should deny the Motion to Dismiss without further briefing, as per this Court's rules.

   First, the Court need s to understand some background, without a repetition of the entire First Amended Complaint.

**A.**  <u>**The Litigation in State Court**</u>

   Project Veritas is a right-wing nonprofit organization, which has become notorious for attempted undercover "sting" operations aimed at progressive organizations and Democratic Party campaigns and committees.

   The modus operandi of Project Veritas is to gain access to the offices of these organizations and campaigns through fraudulent misrepresentation; then to secretly videotape conversations and interactions with personnel of the organizations and campaigns; then to selectively edit the videotapes so as to distort and misrepresent what was said, and then to publicly release those selectively edited portions of the videotapes. The gross volume of Defendant PV's operations exceeds $22,000,000 annually.



Hon. Philip M. Halpern
October 2, 2022
Page 2

On March 30, 2022, Plaintiff Zappier, who had been employed for 2.5 years as the Executive Assistant to PV's CEO, was fired and signed a broad Separation Agreement *as she was being escorted out the door* after a surprise meeting where she was told that she was being terminated, one week after receiving a raise for exemplary service. On April 6, 2022, I wrote, as Plaintiff's counsel, to PV and revoked the agreement, which I asserted was unlawful. Nine pages of the 13-page State Court complaint detail the back-and-forth negotiations over the next two months, during which period PV increased its offer for a new release from $7,500 to $50,000. The core of the complaint was set forth in Paragraph 8: "Enough is enough." Three pages of the complaint describe a made-up incident between a PV employee and Plaintiff's husband; a tort claim arising from this made-up incident has been withdrawn. The complaint seeks either a declaration that the original Separation Agreement was binding, or a return of the $7500 payment.

The State Court complaint, it should be noted, **falsely** alleges that the Separation Agreement followed several days of effort by Ms. Zappier to be reinstated, and  that Plaintiff Zappier "negotiated" the amount and the terms of her severance agreement after a several-day period.

We have moved to dismiss the State Complaint because the documents show that the agreement was not "knowing and willful," and that it violated the Older Americans Benefit Protection Act (OWBPA) (which requires that a waiver of ADEA rights include 21 days of consideration, the right to consult a lawyer, and a right to revoke.)  If we lose that motion the case will not be over; there will need to be discovery about the circumstances around the signing.

The State Court case was commenced only after Plaintiff's counsel stated that Plaintiff was going to proceed with a sex discrimination lawsuit and rejected the $50,000 offer. Counsel for PV rushed to court with its wholly baseless lawsuit, beating Plaintiff to court by little more than a month, so that he could file the very motion he now presents to this Court.

**B.     The Federal Lawsuit**

This Federal Lawsuit is  a detailed recitation of the incredible sexually hostile work environment Plaintiff created for years by PV's leadership, which Plaintiff worked in for 2.5 years, a sexual assault she endured at a Christmas party in December 2021 by a top PV executive (Spadone), and a quid pro quo termination four days after she turned down Spadone's invitation to spend a weekend at his home. It also includes a detailed recitation of her hurried, unexpected discharge and being asked to sign a Separation Agreement on her way out the door. It names Project Veritas, her dual-employer Engage PLLC, and her assailant, Michael Spadone.

**C.     The Proposed Motion Lacks Merit**

We review below each grounds discussed by Defendant PV.



Hon. Philip M. Halpern
October 2, 2022
Page 3

    **1**. **Colorado River deferral** The inapplicability of *Colorado River* is made especially clear by the very case PV relies on, *Mouchantaf*, ( a case decided well before *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013), which narrowed *Colorado River*, cited below) as well as the Second Circuit precedent cited in *Mouchantaf*. The District Court's holdings are instructive:

    a. "*Colorado River* is an 'extraordinary and narrow exception to a federal court's duty to exercise its jurisdiction' and applies only 'in exceptional circumstances where the … repair to state court would serve a countervailing interest,'" citing *FDIC v Four Star Holding Co*., 178 F3d 97, 101 (2d Cir 1999). In *FDIC,* the 2nd Circuit listed the factors to be considered, and, citing *Colorado River* stated that "the test 'does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." No exceptional circumstances exist in this case which create a countervailing interest in staying Federal Court jurisdiction. See also *Bethlehem Contracting Company,* 800 F2d 325 (2d Cir. 1986), where the Court held, " Where…a federal court properly has subject matter jurisdiction, it has a 'virtually unflagging obligation" to exercise that jurisdiction, even if an action concerning the same matter is pending in state court." "Parallel state-court proceedings do not detract from that obligation."*Sprint Communications, Inc. v. Jacobs,* 571 U.S. 69, 77 (2013).

    The Supreme Court has visited the abstention doctrine since *Colorado River*, and, we submit, has narrowed the subsequent application in the lower courts considerably. In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) the Supreme Court held:

      In the main, federal courts are obliged to decide cases within the scope of federal jurisdiction. Abstention is not in order simply because a pending state-court proceeding involves the same subject matter. *New Orleans Public Service, Inc. v. Council of City of New Orleans,* 491 U.S. 350, 373 91989) ("[T]here is no doctrine that ... pendency of state judicial proceedings excludes the federal courts."). This Court has recognized, however, certain instances in which the prospect of undue interference with state proceedings counsels against federal relief. See *id.,* at 368.

      Circumstances fitting within the *Younger* doctrine, we have stressed, are "exceptional"; they include, as catalogued in *NOPSI,* "state criminal prosecutions," "civil enforcement proceedings," and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.,* at 367–368. Because this case presents none of the circumstances the Court has ranked as "exceptional," the general rule governs: "[T]he pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River*, [supra at 817].



**advocates**
**for justice**
chartered attorneys

Hon. Philip M. Halpern
October 2, 2022
Page 4

    b. "Before considering the factors set forth in *Colorado River*, a threshold determination is 'whether the state and federal proceedings are indeed parallel, i.e., whether the same parties are litigating the same issues in the state forum.'" Here, there is one overlapping issue, to wit, whether or not the Separation Agreement was "knowing an willful," Civil rights law claims may be contractually waived where the facts and circumstances surrounding the waiver make it clear that the party foregoing its rights as done so voluntarily and with full knowledge of the consequences of its waiver. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 (1974). The test which the court apply is the "totality of the circumstances" test, first described in *Bormann* v. *AT&T Communications, Inc.*, 875 F.2d 399, 402–03 (2d Cir.), *cert. denied*, 493 U.S. 924 (1989);. And see *Baba v. Warren Management Consultants, Inc.,* 882 F.Supp. 339, 344 (S.D.N.Y.), *aff'd*, 89 F.3d 826 (2d Cir.1995); *Tung v Texaco, Inc.*, 150 F3d 206 (2d Cir 1998); *Laramee v. Jewish Guild for Blind*, 72 F.Supp.2d 357, 359 (S.D.N.Y.,1999).

    But the fact that there is one overlapping issue involving one party does not make the two proceedings parallel. Plaintiff Zappier has not counterclaimed and there are no sex discrimination or age discrimination  issues being litigated in State court. There may be one narrow issue involving the circumstances surrounding the signing of the Separation Agreement; PV's willingness to increase its payout offer by a factor of six(6) is an indication that PV's counsel has his doubts about the enforceability of the Separation Agreement from the start. He rushed to State court for no reason other than to throw a wrench into this lawsuit. That does not create "parallel litigation."

    "With regard to the chronological order in which the courts obtained jurisdiction, *Cone* [*Memorial Hospital v. Mercury Construction Corp,* 460 US 1 (1983)] emphasized that 'priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Bethlehem Contracting Co. v Lehrer McGovern, Inc,* 800 F32d 325, 328 (2d Cir. 1986). The State Court proceeding has seen a Motion to Dismiss filed and not yet argued. It is barely advanced beyond where this case stands.

    Of the six *Colorado River* factors, the most important is the "protection of the federal plaintiff's rights."  The Federal Action  here is a suit under Title VII of the Civil Rights Act where even questions of waiver need to be weighed against the nature of the right being waived. Both cases will require discovery to resolve the waiver issue, but to tell a victim of sexual assault and sexual harassment that she must shelve those critical issues—critical both to the waiver question and to liability—while we litigate a contract case in State Court is hardly protective of Ms. Zappier's federal rights.

    **2.**    <u>The Release Issue</u>. Even if the efficacy of the release doesn't turn on the OWBPA criteria, it is clear—particularly given how Plaintiff addresses the circumstances of her signing of the separation agreement in the Amended Complaint—that defendant PV will be unable to argue as a *matter of law*, under Rule 12(b), that the Separation Agreement *standing alone* will get the complaint dismissed under the principles enunciated in the "totality of the circumstances" test, best described in  *Bormann v. AT&T Communications, Inc.,* 875 F.2d 399,



Hon. Philip M. Halpern
October 2, 2022
Page 5

402–03 (2d Cir.), cert. denied, 493 U.S. 924 (1989). There is no way that the document, standing alone, overcomes the factual assertions that the Separation Agreement was not knowing and willful.

> **3.** <u>**Scope of EEOC Charge.**</u> This court cannot  read the EEOC charge, and the incidents mentioned in it on December 17, 2021 and March 24-30, 2022 in isolation like PV does. The assault of PV Director Spadone on December 17, 2021 was the outgrowth of the sexually hostile work environment which existed at Project Veritas, as was the request to spend a sex-filled weekend with Spadone on March 24. There is no question that everything alleged in the First Amended Complaint is "reasonable related" to conduct alleged in the EEOC charge and "reasonably could be expected to arise" in the course of the investigation of the original charge of discrimination. *Butts v. City of New York*, 990 F.2d 1397, 1401 (2d Cir. 1993).

> **4.** <u>**Post-Employment Conduct**</u>. This is a preposterous notion. Counsel for the parties were negotiating over a severance package. Our negotiations started 10 days post-discharge, PV made three different settlement offers, and when those don't resolve things and PV brought suit. It is hard to understand here how PV can argue, with a straight face, that these negotiations occurred "well after Ms. Zappier's employment."  They cannot seriously compare this to not being allowed to use the employer's phone and office to conduct a job hunt, like in *Wanamaker v. Columbian Rope Co*. The discussion of post-termination *actionable* conduct in *Wanamaker* 108 F.3d 462, 466, is far more applicable. ("Plaintiffs may be able to state a claim for retaliation, even though they are no longer employed by the defendant company, if, for example, the company "blacklists" the former employee, *see Silver v. Mohasco Corp.,* 602 F.2d 1083, 1090 (2d Cir.1979), *rev'd on other grounds,* 447 U.S. 807 (1980), wrongfully refuses to write a recommendation to prospective employers, *see Pantchenko v. C.B. Dolge Co., Inc.,* 581 F.2d 1052, 1054–55 (2d Cir.1978), or sullies the plaintiff's reputation" *Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 466 (2d Cir.1997) The State Court lawsuit, and its baseless tort claims against Mr. Zappier, was clearly retaliatory, as were the allegations, reported in the media, that Ms. Zappier had poorly performed as an employee for many years.

> **5.** <u>**"Impertinent and Scandalous Allegations."**</u>  It is our position that everything we allege in the First Amended Complaint supports Ms. Zappier's assertion that she worked in an extremely unlawful sexually hostile environment which CEO James O'Keefe, Spadone, and their cohorts promoted and condoned for years. We do not seek any relief for actions which occurred prior to any statute of limitations, but each allegation we make has a bearing on how Ms. Zappier was treated during her employment with PV, including the refusal to address the sexual assault.

> **6.** <u>**The Request for A Stay Until the State Court Action Is Decided.**</u> Defendants argue that even if abstention is found inappropriate, this Court should stay this action until the



Hon. Philip M. Halpern
October 2, 2022
Page 6

State Court Action is decided. Judge Rakoff, in *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 2011 WL 13261585, at *2 (S.D.N.Y., 2011) held that " even where a Court may not abstain under *Colorado River*, it may, 'in the exercise of its discretion,' 'stay[ ] proceedings in the action before it pending a decision by the state court, with a view to avoiding wasteful duplication of judicial resources and having the benefit of the state court's views.' *Giulini v. Blessing*, 654 F.2d 189, 193 (2d Cir. 1981), When deciding whether to stay a proceeding, courts consider: "(1) considerations of comity; (2) promotion of judicial efficiency; (3) adequacy and extent of relief available in the alternative forum; (4) identity of parties and issues in both actions; (5) likelihood of prompt disposition in the alternative forum; (6) convenience of the parties, counsel and witnesses; and (7) possibility of prejudice to a party as the result of the stay." *De Carvalhosa v. Lindgren*, 546 F. Supp. 228, 230 (S.D.N.Y. 1982) (quoting *Universal Gypsum of Ga., Inc. v. Am. Cyanamid Co.*, 390 F. Supp. 824, 827 (S.D.N.Y. 1975)." But in that case Judge Rakoff noted that there was a trial about to occur in the State court, and, even then, limited the stay to six months. Here the Federal and State proceedings are in the same early posture, and, in fact, if the requested Motion to Dismiss in this case  is denied, this case will be advancing ahead of the State proceeding. Nothing will be promptly happening in State court, the parties are not the same (Mr. Spadone while a party to the letter to this Court is not affected by the State Court action, nor is co-defendant and co-employer Engage PLLC.

**Conclusion**

For the reasons stated above, neither dismissal nor a stay is appropriate. The proposed motion is entirely lacking in merit and should be denied so that the litigation here can proceed.

Respectfully submitted,

/s/ *Arthur Z. Schwartz*

Arthur Z. Schwartz

AZS:dr

cc:      All Counsel (by ECF)
         Antoinette Zappier